1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8

MELISSA DENISE DIXON,

NO.  C14-578-MJP-JPD

9

Plaintiff,

10

v.

REPORT AND
RECOMMENDATION

11

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

12

13

Defendant.

14        Plaintiff Melissa Denise Dixon appeals the final decision of the Commissioner of the

15   Social Security Administration ("Commissioner") which denied her application for

16   Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C.

17   §§ 1381-83f, after a hearing before an administrative law judge ("ALJ").  For the reasons set

18   forth below, the Court recommends that the Commissioner's decision be AFFIRMED.

19                    I.        FACTS AND PROCEDURAL HISTORY

20        At the time of the administrative hearing, plaintiff was a forty-one year old woman with

21   a tenth grade education.  Administrative Record ("AR") at 68.  Her past work experience

22   includes employment as a kitchen helper and a waitress at her mother's restaurant.  AR at 62,

23   79.  Plaintiff was last gainfully employed in approximately 2008.  AR at 64.

24

REPORT AND RECOMMENDATION - 1

1     In December 2011, plaintiff filed applications for SSI payments and Disability

2   Insurance Benefits ("DIB"), alleging an onset date of May 1, 2005.  AR at 185, 192, 235.

3   However, plaintiff has not engaged in substantial gainful activity during the period at issue.  As

4   a result, plaintiff has not accrued any quarters of coverage, and is not eligible for DIB.  AR at

5   220-21.  Plaintiff asserts that she is disabled due to anxiety and depression.  AR at 235.

6     The Commissioner denied plaintiff's claim initially and on reconsideration.  AR at 83,

7   89.  Plaintiff requested a hearing, which took place on December 5, 2012.  AR at 44-82.  On

8   December 28, 2012, the ALJ issued a decision finding plaintiff not disabled and denied

9   benefits based on his finding that plaintiff could perform a specific job existing in significant

10   numbers in the national economy.  AR at 27-39.  Plaintiff's request for review was denied by

11   the Appeals Council, AR at 5-9, making the ALJ's ruling the "final decision" of the

12   Commissioner as that term is defined by 42 U.S.C. § 405(g).  On April 18, 2014, plaintiff

13   timely filed the present action challenging the Commissioner's decision.  Dkt. 1; Dkt. 8.

14                          II.        JURISDICTION

15     Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§

16   405(g) and 1383(c)(3).

17                        III.        STANDARD OF REVIEW

18     Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of

19   social security benefits when the ALJ's findings are based on legal error or not supported by

20   substantial evidence in the record as a whole.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th

21   Cir. 2005).  "Substantial evidence" is more than a scintilla, less than a preponderance, and is

22   such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

23   *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750

24   (9th Cir. 1989).  The ALJ is responsible for determining credibility, resolving conflicts in

medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id.* at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

## IV.   EVALUATING DISABILITY

As the claimant, Ms. Dixon bears the burden of proving that she is disabled within the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if her impairments are of such severity that she is unable to do her previous work, and cannot, considering her age, education, and work experience, engage in any other substantial gainful activity existing in the

national economy.  42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The claimant bears the burden of proof during steps one through four.  At step five, the burden shifts to the Commissioner.  *Id.*  If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps.  Step one asks whether the claimant is presently engaged in "substantial gainful activity."  20 C.F.R. §§ 404.1520(b), 416.920(b).[1]  If she is, disability benefits are denied.  If she is not, the Commissioner proceeds to step two.  At step two, the claimant must establish that she has one or more medically severe impairments, or combination of impairments, that limit her physical or mental ability to do basic work activities.  If the claimant does not have such impairments, she is not disabled.  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations.  20 C.F.R. §§ 404.1520(d), 416.920(d).  A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled.  *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC").  20 C.F.R. §§ 404.1520(e), 416.920(e).  Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work

---

[1] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit.  20 C.F.R. § 404.1572.

to determine whether she can still perform that work.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If the claimant is able to perform her past relevant work, she is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience.  20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100.  If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

V.     DECISION BELOW

On December 28, 2012, the ALJ issued a decision finding the following:

1.     The claimant has not engaged in substantial gainful activity since December 2, 2011, the application date.

2.     The claimant has the following severe impairments: Mental Conditions.

3.     The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

4.     After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: She can perform unskilled, repetitive, routine work with no contact (except incidental) with the public and occasional contact with supervisors and co-workers.

5.     The claimant has no past relevant work.

6.     The claimant was born on XXXXX, 1971 and was 40 years old, which is defined as a younger individual age 18-49, on the date the application was filed.[2]

7.     The claimant has a limited education and is able to communicate in English.

---

[2]  The actual date is deleted in accordance with Local Rule CR 5.2, W.D. Washington.

8.   Transferability of job skills is not an issue because the claimant does not have past relevant work.

9.   Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

10.  The claimant has not been under a disability, as defined in the Social Security Act, since December 2, 2011, the date the application was filed.

AR at 29-38.

## VI.    ISSUES ON APPEAL

The principal issues on appeal are:

1.   Did the ALJ err in evaluating the opinion of plaintiff's treating physician Dr. Zimberoff?

2.   Did the ALJ err in evaluating plaintiff's credibility?

3.   Did the ALJ err at step five?

Dkt. 19 at 2; Dkt. 20 at 2.

## VII.    DISCUSSION

A.   The ALJ Did Not Err in Evaluating the Medical Opinion Evidence

1.    *Standards for Reviewing Medical Evidence*

As a matter of law, more weight is given to a treating physician's opinion than to that of a non-treating physician because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989); *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007).  A treating physician's opinion, however, is not necessarily conclusive as to either a physical condition or the ultimate issue of disability, and can be rejected, whether or not that opinion is contradicted. *Magallanes*, 881 F.2d at 751.  If an ALJ rejects the opinion of a treating or examining physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not

contradicted by other evidence, and specific and legitimate reasons if it is. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1988). "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citing *Magallanes*, 881 F.2d at 751). The ALJ must do more than merely state his/her conclusions. "He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). Such conclusions must at all times be supported by substantial evidence. *Reddick*, 157 F.3d at 725.

The opinions of examining physicians are to be given more weight than non-examining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Like treating physicians, the uncontradicted opinions of examining physicians may not be rejected without clear and convincing evidence. *Id.* An ALJ may reject the controverted opinions of an examining physician only by providing specific and legitimate reasons that are supported by the record. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

Opinions from non-examining medical sources are to be given less weight than treating or examining doctors. *Lester*, 81 F.3d at 831. However, an ALJ must always evaluate the opinions from such sources and may not simply ignore them. In other words, an ALJ must evaluate the opinion of a non-examining source and explain the weight given to it. Social Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *2. Although an ALJ generally gives more weight to an examining doctor's opinion than to a non-examining doctor's opinion, a non-examining doctor's opinion may nonetheless constitute substantial evidence if it is consistent with other independent evidence in the record. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Orn*, 495 F.3d at 632-33.

2.    *Dr. Zimberoff*

Anya Zimberoff, Psy.D. has treated plaintiff at the HealthPoint Medical Center in SeaTac. AR at 299-301. In July 2011, plaintiff reported stress and anxiety, and Dr. Zimberoff diagnosed major depression and anxiety disorder and assigned a current GAF score of 46 (since December 15, 2010).[3] AR at 300. At a July 18, 2012 appointment, plaintiff reported worrying less and taking time out for herself. She reported things were going in the right direction. AR at 361.

Dr. Zimberoff completed a mental capacity assessment of plaintiff on August 12, 2012. She indicated that plaintiff has extreme limitations in her ability to remember locations and work-like procedures, maintain attention and concentration for extended periods, maintain regular attendance, sustain an ordinary routine, complete a normal workweek without interruptions from psychologically based symptoms, accept instructions and respond appropriately to criticism from supervisors, respond to changes in the work setting, travel to unfamiliar places and use public transportation, and set realistic goals or make plans independently of others. AR at 349-51. Dr. Zimberoff noted that plaintiff "continues to have poor concentration, which prevents her from encoding information adequately. She cannot remember new information." AR at 349. She also noted that plaintiff "does not cope with stress well. Stress worsens her depression and anxiety. She is unable to get along well with

---

[3] The GAF score is a subjective determination based on a scale of 1 to 100 of "the clinician's judgment of the individual's overall level of functioning." AMERICAN PSYCHIATRIC ASS'N, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 32-34 (4th ed. 2000). A GAF score falls within a particular 10-point range if either the symptom severity or the level of functioning falls within the range. *Id.* at 32. For example, a GAF score of 51-60 indicates "moderate symptoms," such as a flat affect or occasional panic attacks, or "moderate difficulty in social or occupational functioning." *Id.* at 34. A GAF score of 41-50 indicates "[s]erious symptoms," such as suicidal ideation or severe obsessional rituals, or "any serious impairment in social, occupational, or school functioning," such as the lack of friends and/or the inability to keep a job. *Id.*

REPORT AND RECOMMENDATION - 8

coworkers or customers and would struggle leading to abnormal slowness or inability to learn new tasks." AR at 350.  Plaintiff "tends to react inappropriately, as stress causes her to be triggered with intense negative emotions which she has trouble regulating." AR at 350. Finally, she noted that plaintiff "cannot focus, learn, or react appropriately. She is depressed and anxious and may have a learning disability."  AR at 351.[4]

Dr. Zimberoff completed a second mental capacities assessment on October 22, 2012. AR at 371-73.  She opined that plaintiff had extreme difficulty understanding and remembering detailed instructions, carrying out detailed instructions, maintaining attention and concentration for extended periods, working in coordination with or in proximity to others without being distracted by them, completing a normal workday or workweek without interruptions from psychologically based symptoms, accepting instructions and responding appropriating to criticism from supervisors, getting along with co-workers or peers without distracting them or exhibiting behavioral extremes, and responding appropriately to changes in the work setting. AR at 371-72.

As far as the "medical/clinical findings that support this assessment," Dr. Zimberoff noted that plaintiff "is very prone to stress and anxiety.  She does not do well with other people and is easily startled and interrupted, which interferes with her concentration."  AR at 372.  In addition, "she cannot tolerate negative comments or any criticism towards her."  AR at 372. Finally, she noted that plaintiff "has a lot of difficulties with transitions and adjusting to changes.  It is very difficult for her to get to our clinic and she missed many appointments due to fear/panic attacks and avoidance due to depression."  AR at 373.

---

[4] Dr. Zimberoff speculated that "repeated trauma is likely to have caused changes in her brain such as hippocampal shrinkage, which impedes problem solving and interferes with memory consolidation."  AR at 351.

REPORT AND RECOMMENDATION - 9

1   The ALJ summarized both of Dr. Zimberoff's mental capacities assessments in detail.

2   AR at 36-37.  However, the ALJ gave "little weight" to Dr. Zimberoff's opinion because

3   "[a]lthough she is a treating doctor, her opinion is not supported by objective evidence in the

4   record and appears to stem from the claimant's reports.  Dr. Zimberoff's treatment notes do not

5   include objective findings that would support the limitations she opined."  AR at 37.

6   Specifically, the ALJ noted that Dr. Zimberoff's "treatment notes do contain may (sic) reports

7   by the claimant that she is depressed or anxious.  It appears that Dr. Zimberoff has relied on

8   those reports rather than objective evidence . . . Her treatment records cite the claimant's

9   patient health questionnaire, which is information provided by the claimant.  As the claimant is

10  found to be not fully credible, any opinion that relies primarily on her reports cannot be given

11  great weight." AR at 37.

12  Plaintiff contends that the ALJ erred by according inadequate weight to Dr.

13  Zimberoff's opinions.  Specifically, plaintiff argues that the ALJ should have afforded Dr.

14  Zimberoff's opinions more weight because, although Dr. Zimberoff did not provide objective

15  findings, her opinions were consistent with the objective findings and opinions of examining

16  physicians Dr. McDuffee and Dr. Pounds.  Dkt. 19 at 13-15.  Plaintiff acknowledges that the

17  ALJ rejected all of these doctors' opinions, but asserts that the ALJ "ignores the fact that all

18  three doctors continually diagnosed Plaintiff with numerous psychiatric disorders and

19  continually opined that her psychiatric symptoms would cause her to have severe difficulties in

20  a work environment."  *Id.* at 15.  Plaintiff asserts that the objective testing conducted by Dr.

21  McDuffee and Dr. Pounds showed that plaintiff put forth her best effort and was not

22  malingering, even if the results of some of the testing resulted in an invalid score.  Thus,

23  plaintiff argues that the ALJ did not provide an adequate reason for rejecting Dr. Zimberoff's

24  opinions. *Id.* at 16.

The Commissioner responds that the ALJ reasonably rejected Dr. Zimberoff's opinions because an "ALJ may reject a treating physician's opinion if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible." Dkt. 20 at 15 (citing *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008)). Specifically, the Commissioner argues that the ALJ provided two specific and legitimate reasons for rejecting Dr. Zimberoff's opinions, which were supported by substantial evidence. First, the limitations Dr. Zimberoff described appeared to be based on plaintiff's unreliable self-reports, and second, were not supported by her treatment notes. Dkt. 20 at 16 (citing AR at 36-37).

The Court agrees with the Commissioner that the ALJ's reasoning was supported by substantial evidence. As a threshold matter, plaintiff does not deny that Dr. Zimberoff relied upon plaintiff's self-report regarding the severity of her symptoms and limitations. She argues, instead, throughout her brief that plaintiff's allegations were credible. As discussed below, the ALJ did not err in evaluating plaintiff's credibility. As a result, Dr. Zimberoff's reliance upon plaintiff's description of her symptoms and functional limitations was a specific and legitimate reason for the ALJ to reject Dr. Zimberoff's opinions. A physician's opinion may be disregarded when it is premised on the properly rejected subjective complaints of a plaintiff. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). *See also Tommasetti*, 533 F.3d at 1041 ("An ALJ may reject a treating physician's opinion if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible.").

The ALJ also reasonably concluded that the marked limitations endorsed by Dr. Zimberoff were not supported by her treatment notes. In fact, her treatment notes do not reflect any mental status examinations or other assessment of plaintiff's cognitive functioning. As the Commissioner points out, "there is no evidence Dr. Zimberoff ever completed a mental status examination beyond assessing whether Plaintiff posed a danger to herself or others."

1    Dkt. 20 at 16.  In fact, the "mental status" section of the majority of Dr. Zimberoff's treatment

2    notes were left entirely blank.  AR at 300, 306, 309, 312, 315.  On a few of Dr. Zimberoff's

3    treatment notes, she simply noted that "[t]he patient does not express suicidal ideation.  The

4    patient does not express homicidal ideation."  AR at 335, 362, 408, 411, 414.  She did not,

5    however, record any other objective findings.  In light of the fact that Dr. Zimberoff's

6    treatment notes only cited to plaintiff's self-reports and do not reflect that she performed any

7    independent assessment of plaintiff's functioning, the ALJ could reasonably infer that the

8    limitations set forth in Dr. Zimberoff's mental capacity assessments dated August 12, 2012 and

9    October 22, 2012 were based on plaintiff's self-report.  *See Sample v. Schweker*, 694 F.2d 639,

10   642 (9th Cir. 1982) (an ALJ may "draw inferences logically flowing from the evidence.").

11           With respect to plaintiff's argument that Dr. Zimberoff's opinion was "well-supported

12   by the examinations and opinions of Drs. McDuffee and Pounds," Dr. Zimberoff does not

13   appear to have ever reviewed the evaluations completed by Dr. McDuffee or Dr. Pounds.  For

14   example, Dr. Zimberoff did not cite to their findings in support of her opinion.  As the

15   Commissioner points out, Drs. McDuffee and Pounds's opinions were also inconsistent with

16   Dr. Zimberoff's mental capacity assessments in significant ways.  In June 2010, Dr. McDuffee

17   concluded that plaintiff "should be able to work."  AR at 397.  In July 2011, Dr. McDuffee

18   concluded that plaintiff's biggest problem was her motivation, and therefore she should be able

19   to work "in a less socially demanding type of job."  AR at 282.  Although Dr. Pounds'

20   conclusions were generally consistent with Dr. Zimberoff's opinions, Dr. Pounds based his

21   opinions on his own objective findings and also expressed his concern that plaintiff "did not

22   give an appropriate effort during the mental status examination today."  AR at 341.

23

24

1    Accordingly, the ALJ properly provided several specific and legitimate reasons for

2    affording Dr. Zimberoff's opinions "little weight," and these reasons were properly supported

3    by substantial evidence.  The ALJ did not err by rejecting Dr. Zimberoff's opinion.

4        B.    The ALJ Did Not Err in Evaluating Plaintiff's Credibility

5            1.    *Standard for Evaluating Credibility*

6    As noted above, credibility determinations are within the province of the ALJ's

7    responsibilities, and will not be disturbed, unless they are not supported by substantial

8    evidence.  A determination of whether to accept a claimant's subjective symptom testimony

9    requires a two-step analysis.  20 C.F.R. §§ 404.1529, 416.929; *Smolen*, 80 F.3d at 1281; SSR

10   96-7p.  First, the ALJ must determine whether there is a medically determinable impairment

11   that reasonably could be expected to cause the claimant's symptoms.  20 C.F.R.

12   §§ 404.1529(b), 416.929(b); *Smolen*, 80 F.3d at 1281-82; SSR 96-7p.  Once a claimant

13   produces medical evidence of an underlying impairment, the ALJ may not discredit the

14   claimant's testimony as to the severity of symptoms solely because they are unsupported by

15   objective medical evidence.  *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc);

16   *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1988).  Absent affirmative evidence showing

17   that the claimant is malingering, the ALJ must provide "clear and convincing" reasons for

18   rejecting the claimant's testimony.  *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722.

19   When evaluating a claimant's credibility, the ALJ must specifically identify what

20   testimony is not credible and what evidence undermines the claimant's complaints; general

21   findings are insufficient.  *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722.  The ALJ may

22   consider "ordinary techniques of credibility evaluation" including a reputation for truthfulness,

23   inconsistencies in testimony or between testimony and conduct, daily activities, work record,

24   and testimony from physicians and third parties concerning the nature, severity, and effect of

the symptoms of which he complains.  *Smolen*, 80 F.3d at 1284; *see also Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

2.  *The ALJ Provided Several Clear and Convincing Reasons for Discounting Plaintiff's Credibility*

Plaintiff reported that anxiety and depression prevent her from working.  AR at 235. She reported that she does not leave her home very often, and that she cries a lot.  AR at 256. She reported that her depression is so severe that she can walk "only a couple of block[s] then I am overwhelmed."  AR at 261.  She testified that her anxiety prevents her from being around other people because she starts to perspire and her heart races.  AR at 61-62, 70.  Finally, she reported severe problems with concentration, completing tasks, understanding, following directions, and getting along with others.  AR at 261.

The ALJ found that plaintiff's "medically determinable impairment could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision."  AR at 32.  The ALJ concluded that plaintiff's "allegations are found to be not fully credible and cannot be relied upon to determine the extent of any limitations she might have.  The [RFC] accommodates the claimant's limitations to the extent they are consistent with the objective medical evidence in the record."  AR at 32.  Specifically, the ALJ concluded that (1) plaintiff did not put forth adequate effort during her psychological examinations with Drs. McDuffee and Pounds; (2) plaintiff's work history suggests a lack of motivation, rather than her impairments, prevent her from working; (3) plaintiff has made inconsistent statements that cast doubt on the veracity of her allegations; and (4) plaintiff's activities are inconsistent with the degree of limitation she described.  AR at 32-34.

1

(a)     *Inadequate Effort on Psychological Examinations*

2      The ALJ noted that plaintiff "had a psychological evaluation with Victoria McDuffee,

3   Ph.D., on June 10, 2010 for her Department of Social Health Services ("DSHS") claim.  The

4   claimant reported difficulty managing her anxiety if there are groups of people around.  She

5   reported being overwhelmed by things."  AR at 32, 391-98.  Dr. McDuffee also noted

6   plaintiff's "responses were vague and [she] provides poor historical information."  AR at 391.

7   Plaintiff "was given the MMPI test which resulted in an invalid protocol which is not

8   recommended for interpretation.  She endorsed questions with a variable response

9   inconsistently, thereby invalidating the protocol."  AR at 391.  However, the ALJ noted that

10  "despite the unreliability of the claimant's reports, Dr. McDuffee diagnosed the claimant with

11  social phobia, anxiety disorder, not otherwise specified, and personality disorder, not otherwise

12  specified."  AR at 32.

13     Dr. McDuffee evaluated plaintiff on three additional occasions.  During the second

14  evaluation on December 28, 2010, plaintiff's "behavior style was guarded, hostile, angry,

15  suspicious, and evasive.  She was fully oriented but her memory was impaired.  The claimant

16  could recall three of three immediately, but could recall no objects after a five minute delay."

17  AR at 32.  The ALJ noted that her "test results indicate a brain impairment or ongoing

18  substance dependence.  This is not consistent with the claimant's ability to prepare meals,

19  grocery shop, clean her home, and manage her money.  This inconsistency tends to support the

20  findings of the MMPI that the claimant's test results are not valid."  AR at 32.

21     During the third evaluation on July 28, 2011, plaintiff told Dr. McDuffee that she had

22  not "really worked" and would fail at it if she did.  She stated that she had not gotten her GED

23  because there were too many people there and she would be unable to pass the math portion.

24  AR at 33, 279.  The TOMM test for malingering did not show that plaintiff was malingering.

REPORT AND RECOMMENDATION - 15

AR at 33, 282.  During Dr. McDuffee's fourth evaluation on November 21, 2011, plaintiff had

slow speech, tense psychomotor activity, impaired memory, poor insight, fair judgment, and

appropriate thought content.  Dr. McDuffee diagnosed generalized anxiety disorder, social

phobia, and mild mental retardation, with a GAF score of 45.[5]  AR at 33, 377.

The ALJ found that plaintiff's "effort and performance on the evaluations conducted by

Dr. McDuffee has been inconsistent and is not entirely reliable.  All of the findings show

limitations that are not consistent with the claimant's level of functioning, and the claimant

appears to do worse on evaluations than expected given her ability to raise her children, care

for her grandchildren, work at her mother's restaurant, go to the store, manage her money, and

use public transportation."  AR at 33.

Jake Pounds, M.D. also performed a psychiatric evaluation of plaintiff on June 1, 2012.

AR at 33.  During the examination, plaintiff could recall three of three objects immediately but

no objects after a five minute delay.  AR at 341.  Dr. Pounds noted that plaintiff "appears to

have some sort of learning disability/cognitive impairment, however I am concerned that she

did not give an appropriate effort during mental status exam questioning today, especially with

the 3-item recall.  She did not seem embarrassed or distressed that she was unable to recall any

of the items even with prompting and repeating them again (during a previous evaluation she

was also 0/3 on delayed recall)."  AR at 341.  Dr. Pounds noted that "[w]hen concern about her

effort with this was brought up she became extremely labile and when she asked what this

meant, this interviewer responded that he had concern for someone who could not recall any of

3 items after a few minutes even with prompting as it could be seen in cognitive impairments

---

[5] A GAF score of 41-50 indicates "[s]erious symptoms," such as suicidal ideation or severe obsessional rituals, or "any serious impairment in social, occupational, or school functioning," such as the lack of friends and/or the inability to keep a job.  AMERICAN PSYCHIATRIC ASS'N, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 34 (4th ed. 2000).

such as dementia, borderline intellectual functioning, or mild mental retardation.  At this point the claimant became extremely labile and agitated . . . She did seem to attempt a majority of the rest of the mental status exam questions appropriately, however still did poorly on many of the calculation and concentration questions."  AR at 342.  Dr. Pounds concluded that plaintiff's "poor performance with delay recall/working memory was inconsistent with someone who could recall the number of the new bus line she took today when leaving as well as operating as the 'reminder' for her mother in her care of her husband."  AR at 342.

The ALJ did not err by concluding that plaintiff failed to make a full effort during the psychological testing conducted by Drs. McDuffee and Pounds, and therefore the results of plaintiff's MMPI testing and mental status examinations cannot be relied upon to determine the full extent of the claimant's functioning and limitations.  AR at 34.  An ALJ properly considers a claimant's failure "to give maximum or consistent effort" on examination in assessing credibility.  *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (claimants "efforts to impede accurate testing of her limitations supports the ALJ's determinations as to her lack of credibility.").

As discussed above, both Dr. McDuffee and Dr. Pounds expressed doubt over plaintiff's effort during testing and the validity of her test results.  AR at 339-42, 401.  Dr. Pounds also noted that plaintiff's performance was inconsistent with her ability to recall the number of the new bus line she took the evaluation and her report that she operates "as the reminder for her mother."  AR at 339, 340, 342.  Although Dr. McDuffee ultimately determined that plaintiff was disabled despite the invalid MMPI profile, the ALJ was not required to reach the same conclusion.  Rather, the ALJ could reasonably consider the results of plaintiff's MMPI testing, along with Dr. Pounds notes indicating that plaintiff was not giving appropriate effort during psychological testing, and conclude that "these factors coupled

with the claimant's apparent lack of motivation to work cast great doubt on the reliability of her allegations." AR at 34.

In addition, the ALJ reasonably observed that plaintiff's test results were inconsistent with her activities, because "the claimant testified that she was able to take a bus and a train to the hearing. She also testified that she asked three people for directions and was able to remember how to get home on the bus. This ability is not consistent with her allegations that she cannot concentr[ate], interact with others, or use public transportation. This is also not consistent with her difficulty recall[ing] three objects after a brief delay on most of her mental status examinations. Clearly if the claimant can remember how to get on the right bus, transfer to the train, walk to the hearing office, and remember how to get home she should be able to recall three objects after a delay." AR at 34. Thus, plaintiff's failure to give full effort during psychological testing was a clear and convincing reason for the ALJ to find plaintiff less than credible.

(b)    *Work History*

The ALJ also found that "casting doubt on the claimant's credibility is her apparent lack of motivation to work. The evidence does not suggest the claimant is motivated to work consistently." AR at 34. Specifically, the ALJ noted that plaintiff "has a poor work history and had performed no job long enough to have it qualify as past relevant work. She testified that she worked at her mother's restaurant but even that work was for less than a year." AR at 34. The ALJ further found that plaintiff "has been receiving assistance since her children were young and it was only after that assistance stopped that she applied for supplemental security income, alleging that she was disabled. Her history and work record indicates that she is not motivated to work and her allegation of limitations from mental health impairments is simply another attempt to receive benefits rather than working." AR at 35.

REPORT AND RECOMMENDATION - 18

1    "In weighing a claimant's credibility, the ALJ may consider his reputation for

2    truthfulness, inconsistencies either in his testimony or between his testimony and his conduct,

3    his daily activities, his work record, and testimony from physicians and third parties

4    concerning the nature, severity, and effect of the symptoms of which he complains." *Light v.*

5    *Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).  Thus, a claimant's work history is also

6    one of the factors that may be considered by the ALJ in evaluating credibility.  *Smolen v.*

7    *Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).  *See also Thomas*, 278 F.3d at 959 (upholding the

8    ALJ's adverse credibility findings because the claimant had "an extremely poor work history"

9    and "has shown little propensity to work in her lifetime.").

10    Plaintiff has never worked at substantial gainful levels.  AR at 214, 235, 388.  Instead,

11    she received temporary assistance for needy families ("TANF") until approximately 2008,

12    when plaintiff's son turned 18, and then applied for disability benefits.  AR at 50, 53, 279, 388.

13    Even where the evidence is susceptible to more than one rational interpretation, the Court must

14    uphold the ALJ's findings if they are supported by inferences reasonably drawn from the

15    record.  *Molina v. Astrue*, 674 F.3d at 1104, 1111 (9th Cir. 2012).  The ALJ did not err by

16    concluding that plaintiff's "apparent lack of motivation to work" casts doubt on her credibility.

17    Indeed, Dr. McDuffee reached a similar conclusion after her July 2011 examination, and

18    opined that "the greatest challenge will be [plaintiff's] lack of motivation and interest in

19    working."  AR at 282.  Thus, plaintiff's lack of motivation to work was a clear and convincing

20    reason for the ALJ to discount plaintiff's credibility.

21                    (c)    *Inconsistent Statements*

22    The ALJ also discounted plaintiff's credibility based upon inconsistencies in plaintiff's

23    statements.  AR at 33-34.  For example, although plaintiff told Dr. Pounds that she worked at

24    her mother's restaurant for nine months, she testified during the hearing that she only worked

there for three to four months.  AR at 33, 61, 339.  In addition, plaintiff testified that because of her anxiety, she stays at home for long periods of time and only goes to the store three times per month.  AR at 33, 70-71, 245, 259.  However, plaintiff told her treating psychiatrist that she walks to the store "most days" for exercise.  AR at 33, 306.

In assessing a claimant's credibility, the ALJ may use ordinary techniques of credibility evaluation, such as considering the claimant's reputation for truthfulness and any inconsistent statements in her testimony.  *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001).  *See also* SSR 96-7p ("One strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record.").  The inconsistencies in plaintiff's statements about her work history and frequency of her trips out of the house were another clear and convincing reason for the ALJ to discount plaintiff's credibility.

(d)     *Daily Activities*

Finally, the ALJ found plaintiff less than fully credible because her allegations were inconsistent with her daily activities.  AR at 34.  Specifically, the ALJ found that plaintiff's "ability to use public transportation, go to the store, and care for her children and grandchildren also casts doubt on her allegations that she is too depressed to leave the house, she isolates, and she cannot be around others.  Her activities simple do not support her allegations."  AR at 34.  The ALJ asserted that "[i]f the claimant's allegations were an accurate reflection of her symptoms she would not be able to function as she is.  The claimant is still helping her adult son, worked at her mother's restaurant, uses the computer, and watches television which require concentration, interaction with others, and focus in contrast to the claimant's allegations of an inability to do these things."  AR at 34.

REPORT AND RECOMMENDATION - 20

1      While a claimant need not "vegetate in a dark room" in order to be eligible for benefits,

2   the ALJ may discredit a claimant's testimony when the claimant reports participation in

3   everyday activities indicating capacities that are transferable to a work setting or, as the ALJ

4   found here, are inconsistent with the claimant's statements about her limitations.  *Orn v.*

5   *Astrue*, 495 F.3d 625, 639 (9th Cir. 2007).  *See also Molina v. Astrue*, 674 F.3d 1104, 1112-13

6   (9th Cir. 2012) ("Even where [everyday] activities suggest some difficulty functioning, they

7   may be grounds for discrediting the claimant's testimony to the extent that they contradict

8   claims of a totally debilitating impairment.").

9      Plaintiff has reported "overwhelming anxiety related to her children and mother."  AR

10  at 338.  She has reported frequent crying and "wanting to remain in the house and prefers to

11  stay isolated."  AR at 387.  In addition, she reported excessive worrying, inability to

12  concentrate, memory problems, and feeling easily overwhelmed.  AR at 270, 279, 376, 387.

13     The ALJ reasonably concluded that plaintiff's "ability to use public transportation, go

14  to the store, and care for her children and grandchildren also casts doubt on her allegations that

15  she is too depressed to leave the house, she isolates, and she cannot be around others."  AR at

16  34.  As discussed above, contrary to plaintiff's report that she goes for long periods of time

17  without leaving her house or interacting with other people, plaintiff told her treating

18  psychiatrist that she walks to the store "most days."  AR at 33, 306.  She was also able to

19  independently use public transportation to travel to Dr. Pounds' consultative exam, and to

20  attend her hearing.  AR at 342.  Although plaintiff testified during the hearing that she has

21  never cared for her grandchildren, she has reported on other occasions that her children and

22  grandchildren were living with her and she was caring for them.  For example, plaintiff

23  reported to Dr. McDuffee in December 2010 that her grown children "recently moved back in"

24

1   with her, and "she had two grandchildren living in her home as well (ages 1 and 3).  She

2   admits she is taking care of them."  AR at 387.

3        Accordingly, the ALJ did not err by finding that plaintiff's "activities simple do not

4   support her allegations" regarding the severity of her symptoms.  AR at 34.  This was a clear

5   and convincing reason for the ALJ to find her less than fully credible.

6        C.    The ALJ Did Not Err at Step Five

7        Finally, plaintiff contends that the ALJ's RFC assessment and hypothetical question to

8   the vocational expert were deficient because they failed to fully reflect plaintiff's actual

9   limitations, as reflected by plaintiff's testimony.  Dkt. 19 at 19.  Thus, plaintiff's remaining

10  assignment of error is essentially a restatement of her previous arguments regarding the

11  medical evidence.

12       Because the Court has affirmed the findings of the ALJ as to plaintiff's prior

13  assignments of error, it must also conclude that there was no error in determining plaintiff's

14  RFC.  Plaintiff has pointed to no credible evidence, apart from plaintiff's subjective complaints

15  which were rejected by the ALJ, establishing the additional limitations that she believes should

16  have been included in the RFC assessment.  Accordingly, the ALJ did not err by omitting these

17  additional limitations from the RFC assessment.  *See Carmickle v. Commissioner, Soc. Sec.*

18  *Admin.*, 533 F.3d 1155, 1164–65 (9th Cir. 2008) (holding that an ALJ's RFC assessment need

19  not include impairments for which the medical records do not establish any work related

20  impairments).

21       Similarly, plaintiff has not demonstrated any deficiency in the ALJ's hypothetical

22  question posed to the VE.  *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175-76 (9th Cir.

23  2008) (rejecting a claimant's argument that a hypothetical question was incomplete when the

24  claimant simply restated her arguments against the RFC finding); *Bayliss*, 427 F.3d 1211,

REPORT AND RECOMMENDATION - 22

1217-18 (9th Cir. 2005) (recognizing that an ALJ must include all limitations supported by substantial evidence in a hypothetical question to the vocational expert, but may exclude unsupported limitations and disregard VE testimony premised on such limitations). Accordingly, plaintiff has not demonstrated error by the ALJ at step five, because the ALJ included all the limitations he found supported by substantial evidence in the hypothetical question posed to the vocational expert.

## VIII.   CONCLUSION

For the foregoing reasons, the Court recommends that the Commissioner's decision be AFFIRMED.  A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit by no later than **January 20, 2015**.  Failure to file objections within the specified time may affect your right to appeal.  Objections should be noted for consideration on the District Judge's motion calendar for the third Friday after they are filed.  Responses to objections may be filed within **fourteen (14)** days after service of objections.  If no timely objections are filed, the matter will be ready for consideration by the District Judge on **January 23, 2015**.

This Report and Recommendation is not an appealable order.  Thus, a notice of appeal seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the assigned District Judge acts on this Report and Recommendation.

DATED this 5th day of January, 2015.

*James P. Donohue*

JAMES P. DONOHUE
United States Magistrate Judge

REPORT AND RECOMMENDATION - 23